FILED

2012 Jul-02  PM 01:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KYLE FASSINA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:11-CV-2901-RDP** |
| | } | |
| **CITIMORTGAGE, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

The court has before it Defendants' Motion to Dismiss Plaintiffs' [sic] First Amended Complaint and Incorporated Memorandum of Law (Doc. # 28), filed February 27, 2012.  The Motion has been fully briefed (Docs. # 31, 32, 34, 35).  Defendants' Motion to Compel Plaintiff Kyle Fassina to Make Payments for his Ongoing Possession and Use of Real Property (Doc. # 36), filed May 9, 2012, to which Plaintiff responded (Doc. # 37), is also pending before the court.  For the reasons discussed below, the court finds that Defendants' Motion to Dismiss is due to be granted in part and denied in part, and that Defendants' Motion to Compel is due to be denied without prejudice.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff Kyle Fassina initiated this lawsuit on July 14, 2011 in the Circuit Court of Jefferson County, Alabama.  (Doc. # 1-1 at 4-15).   On August 18, 2011, Defendants CitiMortgage, Inc. ("Citi") and Federal National Mortgage Association ("Fannie Mae") removed this action to federal court based on diversity jurisdiction.  (Doc. # 1).  Plaintiff's claims arise from the servicing of his mortgage and the foreclosure of his home.  Defendants allegedly held Plaintiff's mortgage at

different times, though Plaintiff's position has vacillated throughout his pleadings over whether Defendants validly held his mortgage.

Defendants filed their original Motion to Dismiss on September 1, 2011 (Doc. # 8), and on September 27, 2011, the court conducted a motion docket. The briefing and oral argument on Defendants' Motion revealed that the crux of the parties' dispute was whether the parties entered into an agreement to reduce Plaintiff's monthly mortgage payments. Plaintiff specifically argues that the alleged loan modification agreement controls, but Plaintiff has never produced such an agreement and Defendants contend that it does not exist. Because the parties' dispute turned on the facts of the case, the court concluded, with the agreement of the parties, that the best way to proceed in this case was to allow the parties to conduct limited discovery on the existence and enforceability of a mortgage modification agreement. The purpose of this limited discovery was to allow the parties the opportunity to address whether (1) Plaintiff's claims are factually supported and (2) Defendants' arguments for dismissal of Plaintiff's claims were more appropriate for Rule 56 (rather than Rule 12) disposition. Accordingly, the court directed the parties to engage in limited discovery on the issues raised in Defendants' Motion to Dismiss, mooted their pending motion,[1] and allowed Plaintiff an opportunity to submit an amended complaint. (Docs. # 20, 21). A deadline was set by which Plaintiff was instructed to file an amended complaint.

---

[1] In response to Defendants' Motion to Dismiss, Plaintiff had filed motions to exclude certain evidence presented in Defendants' motion (Doc. # 12) and to continue his deadline to respond to Defendants' motion (Doc. # 13). Along with Defendants' Motion to Dismiss, Plaintiff's two motions were also deemed moot on September 27, 2011. (Doc. # 20).

On February 13, 2012, Plaintiff filed an Amended Complaint[2] (Doc. # 27), and on February 27, 2012, Defendants moved to dismiss the Amended Complaint (Doc. # 28) under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a response and Defendants filed their reply. (Docs. # 31, 32). Defendants submitted the following documents with their Motion to Dismiss, which they assert should be considered by the court under the incorporation by reference doctrine: the November 30, 2010 letter from counsel Robert J. Wermuth to Plaintiff (Doc. # 28-1 at 2); affidavits of publication of notice of the foreclosure sale (Doc. # 28-1 at 3-4); the May 14, 2010 letter from Citi to Plaintiff containing the loan modification paperwork (Doc. # 28-2 at 2-7); the November 30, 2010 letter from Plaintiff's counsel to Robert J. Wermuth (Doc. # 28-3 at 2); partially-filled out loan modification paperwork containing Plaintiff's signature (Doc. 28-3 at 3-5); and assignments of the mortgage to Citi and Fannie Mae (Docs. # 32-1). Plaintiff has not submitted what he alleges to be the executed loan modification agreement. The only extrinsic document Plaintiff submitted was the May 14, 2010 letter from Citi to Plaintiff containing the blank loan modification agreement that Plaintiff was instructed to fill out to obtain a loan modification.[3] (Doc. # 35 at 8-13). The letter and loan modification paperwork submitted by Plaintiff matches what Defendants submitted in Exhibit B of their Motion to Dismiss. (Doc. # 28-2).[4]

---

[2] Plaintiff did not attach any documents to his Amended Complaint, but attached a few documents to his original complaint, which the court properly considers here. The documents include: Plaintiff's mortgage note (Doc. # 1-2 at 1-3); Plaintiff's mortgage agreement with Superior Bank as the lender and MERS as the nominee for Superior Bank (Doc. # 1-2 at 4-13); a tax assessment of Plaintiff's property (Doc. # 1-3); and the foreclosure deed providing that Fannie Mae purchased Plaintiff's property at the January 4, 2011 foreclosure sale (Doc. # 1-4). Although Plaintiff has attached the foreclosure deed, which in addition to providing that Fannie Mae purchased Plaintiff's property demonstrates that Fannie Mae was assigned rights under Plaintiff's mortgage on December 1, 2010 (Doc. # 1-4), Plaintiff alleges that the foreclosure sale was invalid and that Fannie Mae did not validly acquire rights to his mortgage.

[3] Plaintiff submitted these documents along with his response to Defendants' supplemental submission.

[4] None of the parties have requested that the court treat Defendants' motion as a Rule 56 motion for summary judgment, and the court finds that it would be inappropriate to do so.

Plaintiff's Amended Complaint (Doc. # 27) and Defendant's second Motion to Dismiss (Doc. # 28) largely mirror Plaintiff's original Complaint and Defendants' original Motion to Dismiss. Further, the exhibits submitted to the court in regards to Defendants' original Motion to Dismiss, as well as the parties' differing interpretations of these exhibits, are largely the same exhibits – and interpretations – before the court now.   It appears that the court's order directing the parties to conduct limited discovery was issued in vain.   Because the majority of Plaintiff's claims hinge on facts that are still undetermined, such as the enforceability of a purported loan modification agreement, the resolution of several of Plaintiff's claims necessarily turns on the outcome of further discovery.   At this juncture, the parties remain at square one and have nothing to show for their work since September 27, 2011, except wasted months and higher fees for their clients.

Before proceeding to a discussion about the factual allegations of this case, the court must address whether Defendants' and Plaintiff's exhibits may be considered under the incorporation by reference doctrine.[5]  The general rule – that when matters outside the pleadings are presented to and considered by the court on a Rule 12(b)(6) motion, the motion must be converted into a Rule 56 motion for summary judgment – gives way when the extrinsic document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged, *i.e.* it is undisputed.  *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  When the extrinsic document satisfies these two requirements, courts may incorporate by reference the document without converting the motion to dismiss into a Rule 56 motion for summary judgment.  *Id.*

---

[5] The documents Plaintiff attached to his original complaint are not subject to the incorporation by reference doctrine and are properly considered part of the pleadings because they were submitted with the complaint.  *See Solis-Ramirez v. United States Dep't of Justice*, 758 F. 2d 1426, 1430 (11th Cir. 1985).

First, both parties separately submitted the May 14, 2010 letter from Citi to Plaintiff and the accompanying blank loan modification paperwork.  Therefore, because these documents are central to Plaintiff's claim, it is undisputed that Citi provided Plaintiff with this paperwork, and the contents of the paperwork are undisputed, the court will consider these documents.  (Docs. # 28-2 at 2-7 and # 35 at 8-13).

On the other hand, the letter Defendants submitted from counsel Robert J. Wermuth to Plaintiff (Doc. # 28-1 at 2) providing that the foreclosure sale would occur on January 4, 2011 is disputed (Doc. # 31 at 8-9); accordingly, the court will not consider it at this time.[6]  As to the affidavits of publication showing that Defendants published notice of the foreclosure sale (Doc. # 28-1 at 3-4), one thing is clear – Plaintiff has not presented anything to this court that disputes the documents' authenticity (or meets head on Defendants' evidence that the publications are authentic).  Therefore, Plaintiff has not disputed the authenticity of these documents, and because they are central to Plaintiff's claim, the court will consider these documents.

As to Defendants' third exhibit, a November 30, 2010 letter from Plaintiff's counsel and accompanying signed loan modification paperwork dated November 24, 2010 (Doc. # 28-3 at 2-5), the parties quarrel over the plain language in the letter and the import of the loan modification paperwork.  Defendants argue that because the signed loan modification paperwork they submitted is the *only* signed copy produced, and the fact that it is not signed by Defendants and is dated well after the deadline for executing the agreement, the document itself is not a valid loan modification.

_____

[6] Defendants question whether Plaintiff actually disputes the authenticity of this letter because Plaintiff merely states that he never received it.  Defendants further argue that this letter is conclusive proof that Fassina received notice of the January 4, 2011 foreclosure sale.  The court concludes that Fassina has in fact disputed the authenticity of the letter; Plaintiff's assertion that he never received the letter calls into question whether the letter is what is purports to be.  Further, the court finds Defendants' overly technical interpretation of Plaintiff's words to be unreasonable.

According to Defendants' (flawed) reasoning, it follows that because this document is not a valid loan modification agreement and there are no other potential loan agreements before the court, no valid loan modification agreement exists.  Although Defendants rely on the Statute of Frauds for their argument that the absence of a written loan modification agreement proves fatal to Plaintiff's claims, it is premature at this point for the court to determine before discovery has been completed that no written agreement exists and Defendants' Statute of Frauds argument prevails.[7]  Further, Plaintiff disputes that this is the only signed copy of the loan modification paperwork he sent to Defendants, and maintains that a valid loan modification agreement exists, though he has never produced such a document.  Nevertheless, Plaintiff's failure to provide the alleged document at this point does not require dismissal of his claims that depend on the existence of the document. Additionally, despite the language in the letter sent from his counsel to Defendants' counsel, Plaintiff asserts that the November 24, 2010 paperwork represents a *newly* signed agreement and is not the *original* copy (as Defendant contends and the document itself indicates).  (Doc. # 31 at 13).  Indeed, resolution of the dispute over the meaning and significance of Defendants' documents in their third exhibit is more suited for summary judgment analysis (if not trial on the merits), and the court thus does not consider Defendants' third exhibit.  (*See* Doc. # 28-3).

Along with their reply brief, Defendants also submitted exhibits demonstrating the assignment of Plaintiff's mortgage to Citi on September 23, 2010 (Doc. # 32-1 at 1) and Citi's subsequent assignment of Plaintiff's mortgage to Fannie Mae on December 1, 2010  (Doc. # 32-1

---

[7] After holding a previous hearing in this matter, the court permitted limited discovery that it believed would be utilized to explore issues such as whether a loan modification agreement actually exists.  For whatever reason, it does not appear that the parties took full advantage of that opportunity, and the court is simply not in a position to make any finding about the existence or non-existence of a loan modification agreement on such a limited record.

at 2).  Because "[a]rguments raised for the first time in a reply brief are not properly before the reviewing court," *U.S. v. Benz*, 740 F. 2d 903, 916 (11th Cir. 1984), the court will not consider Defendants' exhibits that were presented for the first time in their reply brief.[8]

In sum, when assessing the facts on this Rule 12(b)(6) motion, the court examines Plaintiff's allegations in his Amended Complaint, Plaintiff's attachments to his original complaint, the May 14, 2010 letter from Citi to Plaintiff and enclosed blank loan modification paperwork, and the affidavits of publication.  As Defendants' arguments rely heavily on the exhibits, and their reply brief failed to account for Plaintiff's challenges to their exhibits, the court's refusal to consider some of Defendants' exhibits extinguishes several of their arguments, as discussed below.[9]

### B.    Facts

Around August 15, 2007, Plaintiff executed a mortgage secured by his real property, located at 2103 Sardis Road, Gardendale, Alabama 35701, to Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for Superior Bank.  (Docs. # 1-2 and # 27 ¶¶ 3, 6).  At some point, Citi and/or Fannie Mae may have acquired the ownership and servicing rights of Plaintiff's note and/or mortgage.  (Doc. # 27 ¶¶ 4, 5, 7).  Plaintiff appears to question whether the transfer of ownership and

---

[8] It is certainly not the best practice to submit an extrinsic document for the first time with a reply brief to a motion to dismiss, especially because the standard for admitting such a document requires the plaintiff to have an opportunity to address the authenticity of the document.

[9] On April 5, 2012, the court permitted Defendants to supplement their Motion with a recently-issued decision from the Middle District of Alabama, *Manker et al. v. CitiMortgage, Inc.*, No. 10-1012 (M.D. Ala. Mar. 23, 2012), and supplemental brief.  (Doc. # 33).  In response to Defendants' supplemental brief (Doc. # 34), Plaintiff filed a response (Doc. # 35).  Defendants argue that *Manker* is similar to the instant action and supports their argument that the purported loan modification document does not satisfy the Statute of Frauds.  A review of the *Manker* decision, however, reveals that it is distinguishable from the instant action for many reasons. The *Manker* case involved a different standard, one for judgment on the pleadings, which is appropriate when no issues of material facts exist.  Here, the appropriate standard is the familiar one that applies on a motion to dismiss.  Additionally, in the *Manker* decision, there were several undisputed facts which remain disputed in this case – such as whether the assignments of the mortgage were valid.  Although the *Manker* decision and this action involve strikingly similar facts, the concrete evidence before the *Manker* court and this court differ greatly.

servicing rights to Citi was valid, and Plaintiff wavers over whether he believes the transfer of mortgage rights to Fannie Mae was valid.

In or around April 2012, Plaintiff allegedly requested information from Citi regarding loan modification. (*Id*. ¶ 8). Plaintiff received a letter from Citi dated May 14, 2010, stating that it could not modify Plaintiff's mortgage payments under the Home Affordable Modification Program ("HAMP") because Plaintiff failed to provide the requested documents. (Doc. # 28-2 at 2). However, Citi explained that Plaintiff was eligible for another modification opportunity offered by the investor that owned the loan. (*Id*.) To take advantage of this loan modification offer, Citi informed Plaintiff that he was required to do three things: (1) read the attached agreement; (2) complete and sign the agreement and hardship affidavit; and (3) return the agreement to Citi by June 15, 2010 in the envelope provided. (*Id*. at 2-7). The attached paperwork is titled "Loan Modification Agreement" and contains several blank spaces that Plaintiff was required to fill out. (*Id*. at 4-7). Plaintiff believed that the investor referred to in the letter, who was offering the modification, was Fannie Mae. (Doc. # 27 ¶ 9).

Plaintiff alleges that he both timely executed and returned the paperwork to Citi. (*Id*. ¶ 10). Based on this paperwork, Plaintiff asserts that his monthly payments became $682.40 with a two percent interest rate for five years. (*Id*. ¶ 11). After supposedly executing the loan modification agreement, Plaintiff alleged that he timely made monthly payments of $682.40, which Citi accepted. (*Id*.) Plaintiff also asserts that he did not default on his mortgage loan as modified. (*Id*. ¶ 27).

On or around July 14, 2010, Plaintiff received a demand letter from Citi's Foreclosure Review Unit, referencing a prior letter of default that Citi allegedly sent Plaintiff. (*Id*. ¶ 12). The prior letter apparently explained that he owed $7,891.69, including $286.72 in late charges and

$124.50 in delinquency expenses, and that Citi was now sending Plaintiff's account to local counsel to begin foreclosure proceedings.  (*Id*.)  Plaintiff asserts that he never received the first letter referenced in the July 14, 2010 letter.  (*Id*.)  A few days later, Plaintiff received a monthly statement from Citi listing his total amount due as $8,998.78, and the letter did not reference any of Plaintiff's payments of $682.40.  (*Id*. ¶ 13).   Sometime after receiving his monthly statement, Plaintiff contacted Citi.  (*Id*. ¶ 14).  He alleges he was told that his loan modification might not be in Citi's system yet, but he should continue making modified payments and had no reason to worry.  (*Id*.)

On or around July 28, 2010, Plaintiff's attorney, Max C. Pope, wrote a letter to Citi explaining Plaintiff's situation and requesting clarification, but Citi never responded to the letter. (*Id*. ¶ 15).  Around October 15, 2010, Plaintiff asserted that his monthly payment – the modified amount – was denied.  (*Id*. ¶ 16).  He was told that there was no record of the loan modification agreement and since he had been making only partial loan payments, Citi had initiated foreclosure proceedings.  (*Id*. ¶¶ 16-17).

On or around October 18, 2010, Plaintiff received a letter from the law firm Stephens, Millirons, Harrision & Gammons, P.C. ("Stephens Millirons"), indicating that Plaintiff's entire loan amount was due and enclosing notice that the foreclosure sale would occur on November 30, 2010. (*Id*. ¶ 18).  Notice of the November 30, 2012 foreclosure sale was published in a local newspaper on October 23, October 30, and November 6, 2010.  (Doc. # 28-1 at 3).  Plaintiff's counsel allegedly contacted Stephens Millirons prior to the November 30, 2012 foreclosure sale seeking an explanation of why the property was in foreclosure and requesting a postponement of the foreclosure sale.  (Doc. # 27 ¶ 19).  Plaintiff's counsel was ultimately successful in obtaining a postponement of the foreclosure sale.  (*Id*. ¶ 20).  Additionally, Plaintiff alleges that Citi agreed to review the loan

modification agreement paperwork and that he provided Citi with a newly signed acceptance of the previous modification agreement. (*Id*.)

The November 30, 2010 foreclosure sale was postponed to January 4, 2011. (Doc. # 28-1 at 4). Notice of the postponement of the November 30, 2010 foreclosure sale to January 4, 2011 was published in a local newspaper on December 18, 2010. (*Id*.) Around January 5, 2011, Plaintiff received a letter from Stephens Millirons stating that Fannie Mae had purchased Plaintiff's property at the January 4, 2011 foreclosure sale and demanding possession within ten days. (Doc. # 27 ¶ 21; *see* Doc. # 1-4 (foreclosure deed)). Plaintiff alleges that he had never received notice of the January 4, 2011 foreclosure sale. (*Id*. ¶ 22).

Plaintiff asserts the following claims against Defendants: negligent, reckless, and or wanton conduct (Count 1); negligent undertaking (Count 2); negligent, reckless, and/or wanton training and/or supervision (Count 3); breach of the loan modification agreement (Count 4); breach of the mortgage notice (Count 5); promissory estoppel, in the alternative (Count 6); fraud (Count 7); slander of title (Count 8); nuisance (Count 9); and invasion of privacy (Count 10).[10] (*Id*. ¶¶ 29-99).

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet

---

[10] Notably, Plaintiff has not clearly alleged a wrongful foreclosure claim, though several of his claims suggest that he intended to do so and rely on the argument that the foreclosure was wrongful.

Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer

11

more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

## III.   DISCUSSION

### A.   Count 1: Negligent, Reckless, and/or Wanton Conduct[11]

Plaintiff's claims in Count 1 make several different allegations against Defendants, including the following: Citi owed Plaintiff a duty to service his mortgage with reasonable care, but Citi failed to do so (Doc. # 27 ¶¶ 31-32); Fannie Mae is liable for Citi's conduct based upon different theories, including vicarious liability (*Id.* ¶ 37); Defendants are subject to (and violated) various regulations and laws through HAMP, TARP, and the U.S. Treasury Department that require them to explore ways for homeowners to avoid foreclosure (*Id.* ¶ 30); and Citi initiated foreclosure proceedings on a property to which they do not hold the note and/or mortgage (*Id.* ¶ 36).

The undersigned agrees with the Middle District of Alabama's recent analysis of Alabama law regarding negligence and wantonness claims asserted by a mortgagor against the mortgagee and/or mortgage servicer. *See McClung v. MERS, Inc.*, No. 11-3621, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012) (agreeing with *Blake v. Bank of America, N.A.*, — F. Supp. 2d —, 2012 WL 607976 (M.D. Ala. Feb. 27, 2012)). First, Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract." *McClung*, 2012 WL 1642209, at *7 (citing *Blake*, 2012 WL 607976, at *3). "[A] negligent failure to perform a contract . . . is but a breach of the contract." *McClung*, 2012 WL 1642209, at *7 (quoting *Blake*, 2012 WL 607976, at *3); see also

---

[11] Claims alleging wantonness are analyzed similarly to negligence claims, as a duty is required for both types of claims. *See, e.g., Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003). Additionally, wantonness is defined as "reckless indifference to the consequences." *Smith v. Davis*, 599 So. 2d 586, 588 (Ala. 1992). Thus the court analyzes claims for recklessness and wanton conduct as one claim. *See id*.

*Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 228 (Ala.1996), *overruled on other grounds by White Sands Grp., LLC v. PRS II, LLC*, 32 So.3d 5 (Ala.2009) ("a mere failure to perform a contractual obligation is not a tort")*.* "A tort claim can only be asserted when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." *McClung*, 2012 WL 1642209, at *7 (citing *Blake*, 2012 WL 607976, at *3). It follows that Alabama law "does not recognize a cause of action for negligent or wanton mortgage servicing." *Id*. (dismissing Plaintiff's claim for negligent, careless, and wanton mortgage servicing) (citing *Blake*, 2012 WL 607976, at *3-4).

Any obligations Defendants owed to Plaintiff arose from the mortgage agreement, note, and to the extent such a document exists, a loan modification agreement, not from the duty of reasonable care generally owed to members of the public.[12] The court concludes that because all of the duties Defendants allegedly breached are based on contractual agreements between the parties, and because Alabama law does not permit Plaintiff to assert a tort claim against Defendants for their purported breach of a contract, Plaintiff's claims in Count 1 are not legally cognizable. Further, Plaintiff's claim alleging negligent, reckless, and/or wanton mortgage servicing is not valid under Alabama law.[13]

Additionally, the Eleventh Circuit has held in an unpublished opinion that HAMP, which was implemented by the Secretary of the United States Treasury pursuant to the Emergency Economic

---

[12] To the extent Plaintiff has asserted that Defendants owed them duties outside of their contractual relationship, Plaintiff has not sufficiently pled a claim based on the breach of any such purported duty.

[13] Plaintiff seems to have asserted this claim in other counts of her Amended Complaint (*see e.g.*, Doc. # 27 ¶ 42). All of Plaintiff's claims in her Amended Complaint alleging any sort of negligent, reckless, or wanton mortgage servicing are due to be dismissed.

Stabilization Act of 2008, does not provide borrowers with a private cause of action.  *Nelson v. Bank of America, N.A.*, 446 F. App'x 158, 159 (11th Cir. 2011); *see also Mosley v. Wells Fargo Bank, N.A.*, 802 F. Supp. 2d 695, 699 (E.D. Va. 2011) (noting that federal courts have uniformly held that the HAMP does not create a private cause of action for borrowers against lenders).  The court finds the Eleventh Circuit's analysis of this issue, while not binding, is persuasive and agrees with the Eleventh Circuit, as well as the "host of district courts" outside of this circuit that have similarly concluded that HAMP does not contain a private cause of action.  *See Nelson*, 446 F. App'x at 159. Accordingly, Plaintiff cannot assert a claim under HAMP.

The Eleventh Circuit has also noted in an unpublished opinion that the Troubled Asset Relief Program ("TARP") does not mention private causes of action against private entities and it does not seem that Congress intended to allow private actions.  *Thomas v. Pentagon Federal Credit Union*, 393 F. App'x 635, 638 (11th Cir. 2010); *see also Wachovia Bank, Nat. Assoc. v. Lone Pine, Inc.*, 2010 WL 2553880, at *2 (N.D. Ga. June 15, 2010) (listing district court cases from this Circuit and the Ninth Circuit that have agreed that the TARP does not provide a private cause of action to individual borrowers against lenders).  Once again, the court finds the Eleventh Circuit's analysis persuasive and concludes that Plaintiff cannot assert a claim under TARP.

**B.      Count 5: Breach of the Mortgage Notice**[14]

Plaintiff next alleges that Defendants are bound by the mortgage agreement because they have claimed to hold his mortgage.  (Doc. # 27 ¶¶ 63-65).  He asserts that by failing to notify him

---

[14] It is ironic that Plaintiff accuses Defendants of breaching the mortgage agreement while simultaneously questioning whether Citi and possibly Fannie Mae validly acquired rights under the agreement.  Although Plaintiff is permitted to make inconsistent assertions at this point, *see* FED. R. CIV. P. 8(d), he will likely be forced to take a position once all of the evidence has been produced.

14

about the January 4, 2012 foreclosure sale, Defendants breached Paragraph 22 of the mortgage agreement. (*Id.* ¶ 66). Defendants argue that they complied with the mortgage agreement's notice provision by publishing notice of the foreclosure sale.[15]  Further, they argue that Plaintiff's claim is due to be dismissed because he cannot establish his own performance under the mortgage contract as he has defaulted on his mortgage. Plaintiff responds in turn that the one-time publication of notice for the January 4, 2011 sale is not sufficient to meet the required notice under section 35-10-8 of the Alabama Code, which provides that notice must be published once a week for three consecutive weeks. Defendants argue that this provision does not control when a foreclosure sale has been postponed at the borrower's request. Instead, they argue, section 6-8-69 of the Alabama Code controls, which requires only that notice of the postponement of the foreclosure sale be published one time.

Paragraph 22 of the mortgage agreement provides that if a lender "invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15." (Doc. # 1-2 at 11). Paragraph 22 also requires that publication of the notice once a week for three consecutive weeks. This paragraph does not address the postponement of a foreclosure sale. Section 15 of the mortgage agreement provides that "[a]ll notice given by Borrower or Lender in connection with this Security Instrument must be in writing." (Doc. # 1-2 at 10). This section contemplates notice by first class mail or actually delivered to the borrower's address. (*Id.*) This section similarly does not reference the notice required for the postponement of a foreclosure sale. Further, the last sentence of this section provides that "[i]f any notice required by this Security Instrument is also required

---

[15] Defendants also rely on the letter they attached to their Motion to Dismiss as support for their argument that they provided notice to Plaintiff, but the court has declined to consider this exhibit.

under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument." (*Id.*) Accordingly, the mortgage contract permits the notice requirement for postponement of a foreclosure sale to be satisfied pursuant to the relevant requirements under Alabama law.

Postponement of a foreclosure sale is governed by section 6-8-69 of the Alabama Code. *In re Scott*, 281 B.R. 48, 50 (Bankr. S.D. Ala. 2001); *cf. Bullock v. Bishop*, 435 So. 2d 24, 26 (Ala. 1983) (section 35-10-8 of the Alabama Code governs the notice required for an original foreclosure sale, not a postponed sale). Section 6-8-69 provides that:

> Whenever it becomes necessary to postpone any sale that has been advertised to occur on a certain day, the same may be postponed by the auctioneer or attorney announcing at the time set for sale, the date to which said sale is postponed; and the original notice shall be published once again, with a statement at the bottom that said sale has been postponed and the date when it will occur.

Ala. Code § 6-8-69 (1975). The statute thus requires that (1) the postponement of the sale must be announced on the day it was originally set for sale and (2) the original notice must be published with a statement indicating the sale has been postponed. *Id.*

Plaintiff has not alleged that Defendants breached the mortgage contract by failing to properly notify him about the November 30, 2010 sale; his allegations only relate to the January 4, 2010 sale. Accordingly, only the evidence relating to notice of the January 4, 2011 forelcosure sale is relevant to Plaintiff's claim. The affidavit of publication establishes that the original notice of the sale was published again in a local newspaper on December 28, 2010, with a statement that the sale had been postponed from November 30, 2010 to January 4, 2011. (Doc. # 28-1 at 4). Additionally, the postponement of the sale to January 4, 2011 was announced on November 30, 2010 "during the legal

16

hours of sale." (*Id.*)  Therefore, Defendants satisfied the requirements of notifying Plaintiff about the January 4, 2011 foreclosure under Alabama law, which in turn satisfied the requirements under Paragraphs 22 and 15 of the mortgage contract.  Thus Plaintiff's claim that Defendants breached the mortgage agreement by failing to provide Defendants with notice of the January 4, 2011 sale is due to be dismissed with prejudice.[16]

### C.      Count 7: Fraud[17]

In  federal  court,  state  claims  for  fraud  must  comply  with  the  heightened  pleading requirements in Federal Rule of Civil Procedure 9(b).  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).  Rule 9(b) requires a party alleging claims for fraud or mistake to "state with particularity the circumstances constituting fraud or mistake . . . ."  FED. R. CIV. P. 9(b).  A plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citations omitted).  Further, "the plaintiff must allege facts with respect to each defendant's participation in the fraud."  *Id.*; *see Brooks v. Blue*

---

[16] Although the court concludes that *notice* of the January 4, 2011 foreclosure sale was valid, the court offers no opinion on whether the foreclosure sale itself was valid.

[17] Although Plaintiff has not specified what sort of fraud claim he has asserted, it seems that he has pled a fraudulent misrepresentation claim under Alabama law.  The court need not address whether Plaintiff has satisfied the pleading requirements for a fraud claim under Alabama law since he has failed to plead his fraud claim with the particularity required under Federal Rule 9(b).  To the extent Plaintiff has attempted to assert a different type of fraud claim, Plaintiff's Amended Complaint contains such conclusory, general allegations for his fraud claim that the court cannot determine what other type of fraud claim he may have attempted to plead.  Accordingly, the court concludes that on the face of Plaintiff's Complaint, the only potentially cognizable fraud claim is one for a fraudulent misrepresentation.

*Cross and Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1381 (11th Cir. 1997) (a plaintiff cannot simply lump all of the defendants together in his allegations of fraud).

Plaintiff argues that the following facts support his fraud claim: Citi's initiation of foreclosure proceedings when it knew it had no right to foreclose on Plaintiff's property; the incorrect information Citi provided Plaintiff regarding the status of a loan modification and/or foreclosure proceedings; the statement that the loan might not be in the system yet but to continue making payments; and the fact that Citi continued to accept partial payments. (Doc. # 31 at 24-25). Plaintiff refers to certain portions of his Amended Complaint for these allegations (*See* Doc. # 27 ¶¶ 14, 15, 18, 77, 78, 80-83), but these paragraphs, as well as the remaining paragraphs in Count 7, only attribute specific conduct to Citi, not Fannie Mae. The allegations that refer generally to both Defendants are not sufficient to meet the pleading requirement for fraud claims against Fannie Mae because Plaintiff has not alleged any specific conduct or incident in which Fannie Mae was involved. *See Am. Dental Ass'n*, 605 F.3d at 1291; (Doc. # 27 ¶¶ 77-84).

Indeed, with respect to his fraud claim against Citi, the only specific incident referenced is Plaintiff's allegation that he relied on a misrepresentation allegedly made by a representative for Citi that his loan modification might not be in Citi's system yet, and therefore he should continue to make modified payments, and not worry. (Doc. # 27 ¶¶ 14, 81). Plaintiff does not specifically allege the date on which this occurred, but based on his other allegations, he alleges that it occurred sometime between July 19, 2010 and July 28, 2010. (*Id*. ¶¶ 13-15).

The court concludes that Plaintiff has not satisfied the particularity requirements in Rule 9(b). Plaintiff has identified the precise allegedly fraudulent statements Citi made to Plaintiff and how Plaintiff was misled by the statements. He has not stated the date on which the statement was made,

18

but merely provided a time frame for when the statement occurred (nine days).  He has failed to

identify the particular employee (by name or description) who made the statement.  (*See* Doc. # 27

¶ 14 ("Plaintiff contacted Citi to discuss his account.")).  Further, Plaintiff has not specifically

alleged the place where the statement occurred or what Citi purportedly gained by the alleged fraud.

Plaintiff's failure to allege with specificity the elements of his fraud claim is fatal to his claim.  The

policy underlying Rule 9(b) serves to protect defendants from frivolous suits, and allowing a plaintiff

to proceed on a fraud claim without satisfying the minimum pleading requirements allows plaintiffs

"to learn the complaint's bare essentials through discovery and may needlessly harm a defendants'

[sic] goodwill and reputation by bringing a suit that is, at best, missing some of its core

underpinnings, and, at worst, are baseless allegations used to extract settlements.  *U.S. ex rel.*

*Clausen v. Laboratory Corp. of America, Inc.*, 290 F. 3d 1301, 1313 n.24 (11th Cir. 2002).

Accordingly, Plaintiff's fraud claims against both of the Defendants are subject to dismissal without

prejudice for failure to meet the particularity requirements of Rule 9(b).[18]

### D.    Count 9: Nuisance

Plaintiff's claim includes allegations that Defendants' conduct constitutes a nuisance against

the quiet enjoyment and peaceful possession of Plaintiff's property, and that Defendants' conduct

was willful and malicious and/or oppressive.  (Doc. # 27 ¶¶ 92-93).  Plaintiff admits in his response

that "he has not pled any physical intrusion onto his property," but he argues that an "intrusion can

---

[18] The court notes that Plaintiff was granted an opportunity to conduct limited discovery so that he could acquire more evidence and plead his claims with more clarity.  The Eleventh Circuit has found that dismissal of a claim is justified when a party "chooses to disregard the sound and proper directions of the district court" to remedy deficiencies in the original complaint.  *See, e.g.*, *Friedlander v. Nims*, 755 F. 2d 810, 813 (11th Cir. 1985).  Although the court is not dismissing Plaintiff's fraud claim solely on the basis of Plaintiff's failure to take advantage of the opportunity to sufficiently shore up his Amended Complaint, the court has taken this factor into consideration and further notes that even after limited discovery, Plaintiff still cannot comply (or has not complied) with the requirements of Rule 9(b).

be inferred by the actions of Defendants in wrongfully foreclosing on Plaintiff's property." (Doc. # 31 at 18).

A private nuisance occurs where there has been an interference with the use and enjoyment of one's property. *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 529 (Ala. 1979). The interference must be "substantial and unreasonable . . . as would be offensive or inconvenient to the normal person . . . ." *Morgan Cnty. Concrete Co. v. Tanner*, 374 So. 2d 1344, 1346 (Ala. 1979) (citations omitted). Classic cases of a private nuisance include a barking dog or noxious odors. *Borland*, 369 So. 2d at 530. "These intrusions do not typically result in any actionable damages to the [property]; the injury caused by such acts usually results in a diminution of the use value of the property causally related to the harmful conduct made the basis of the claim." *Id*. A nuisance involves the idea of recurring or continuous acts that cause injury. *Banks v. Harbin*, 500 So. 2d 1027, 1029 (Ala. 1986) (citations omitted); *see Banks v. Corte*, 521 So. 2d 960, 962 (Ala. 1988) (three incidents of conduct was not sufficiently continuous or recurring to give rise to liability for a nuisance). The court is not aware of any case under Alabama law that has addressed whether a foreclosure sale, which the homeowner alleges was invalid, constituted a private nuisance on the homeowner's property.

First, the court questions whether a foreclosure sale, or the lender's actions leading up to the foreclosure sale, can amount to a nuisance under Alabama law. Plaintiff has not provided any caselaw supporting his argument that a wrongful foreclosure creates a valid basis for prevailing on a nuisance claim. Second, it is clear from Plaintiff's Amended Complaint that Plaintiff asserted the nuisance claim as a roundabout way of seeking redress for an alleged wrongful foreclosure in violation of the mortgage. This claim sounds in contract. However, a breach of contract claim is

a separate claim under Alabama law with starkly different elements than those required to establish

a nuisance claim.  The resolution of Plaintiff's nuisance claim as pled hinges on the determination

of whether the foreclosure sale was wrongful; Plaintiff's claim does not rest on any facts that would

support a nuisance claim sufficient to withstand a motion to dismiss.  Additionally, a nuisance is

characterized by recurrent or continuous conduct, and the one-time foreclosure sale does not embody

this sort of conduct.  Finally, the assertion of this claim is essentially an end run around the rule that

Alabama law does not permit a tort-like cause of action for a breach of a contract duty.  For all these

reasons, the court finds that Plaintiff's nuisance claim is in essence a breach of contract claim.

Accordingly, the court concludes that Plaintiff has not plead a plausible nuisance claim.[19]

### E.    Plaintiff's Remaining Claims Have Satisfied its Pleading Requirements.

Several of Plaintiff's remaining claims rest on his argument that because the parties entered

into a loan modification agreement, the foreclosure sale on his property was invalid.  As previously

discussed, the court cannot determine at this time, one way or the other, whether a loan modification

agreement between the parties exists and is enforceable.  Further, considering the other relevant

factual disputes that remain and cannot be resolved on a motion to dismiss, all of Plaintiff's claims

that turn on evidence that has yet to be developed have satisfied the applicable pleading standards.

---

[19] Moreover, to the extent Plaintiff's nuisance claim is a veiled wrongful foreclosure claim, Plaintiff has failed
to plead a plausible wrongful foreclosure claim.  Under Alabama law, "[a] mortgagor has a wrongful foreclosure action
whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed
by the mortgagor."  *Hardy v. Jim Walter Homes, Inc.*, No. 06-0687, 2007 WL 174391, at *6 (S.D. Ala. Jan. 18, 2007)
(citing *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992)).  Plaintiff
has not alleged any sort of "other purpose" Defendants may have had when effecting the foreclosure.  Accordingly, the
court concludes that Plaintiff has not alleged a plausible wrongful foreclosure action.

### 1.      Count 2 and Count 3: Negligent Undertaking and Negligent, Reckless, and/or Wanton Training and/or Supervision[20]

Plaintiff's allegations with respect to his claim in Count 2 include that Citi voluntarily assisted Plaintiff in modifying his mortgage payments, but breached the duty to use reasonable care when assisting him.  (Doc. # 27 ¶ 41).  Again, he alleges that Fannie Mae is liable for Citi's conduct. (*Id*. ¶ 44).  As to Plaintiff's claim in Count 3, Plaintiff alleges that Defendants failed to train or supervise its employees, that Defendants knew or should have known that Plaintiff was relying on Defendants' conduct in making reduced loan payments, and that Defendants failed to adequately respond to the problem.  (Doc. # 27 ¶¶ 46-48).  Additionally, Plaintiff asserts that Defendants knew or should have known that Plaintiff and his counsel were neither aware of nor notified about the January 4, 2011 foreclosure sale.  (*Id*. ¶ 49).

"Alabama clearly recognizes the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith."  *Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1219 (Ala. 2008) (citing *Daily v. City of Birmingham*, 378 So. 2d 728, 729 (Ala. 1979)).  Whether a party has voluntarily assumed a duty through affirmative conduct is determined in light of all the facts and circumstances.  *Id*.  (citations omitted); *see Spriggs v. Compass Bank*, 742 So. 2d 178, 181 (Ala. Civ. App. 1997) (negligence claim based on the "undertake a duty" doctrine may be asserted by a homeowner against a mortgage lender under Alabama law).

---

[20] To the extent Plaintiff has attempted to allege a claim under HAMP or a veiled breach of contract claim here, Plaintiff's claim is not cognizable under Alabama law as discussed above.  *See supra* Part. III.A.  Further, any duties Plaintiff alleged Defendants breached must be separate from any of Defendants' obligations under the mortgage contract; otherwise, they are veiled negligent breach of contract claims, which are not cognizable.

"To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that '(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately.'" *Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1227-1228 (N.D. Ala. 2010) (quoting *Edwards v. Hyundai Moto Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009)).   For a claim of reckless or wanton training or supervision, as opposed to one of negligence, a plaintiff must show that the employer "had actual knowledge of an employee's tortious conduct- a higher bar than negligence's 'knew or should have known' standard.   Furthermore, wantonness requires actual knowledge by the employer that 'injury is likely to result from his act or omission.'"   *Id.* at 1228 (citations omitted).

At this point, Plaintiff has alleged sufficient facts for his claims under Count 2 and 3 to survive a motion to dismiss.   Although the determination of whether these two negligence claims have passed the Rule 12(b)(6) standard is a close call, the court concludes that Plaintiff has demonstrated by "more than a sheer possibility" that Defendants may be liable for the alleged conduct.   *See Iqbal*, 129 S. Ct. at 1949.   The question of whether these claims ultimately will be found to have merit will necessarily turn on the facts in this case, which have yet to be developed. Accordingly, Plaintiff's claims for negligent undertaking and negligent, reckless, and/or wanton supervision and/or training have satisfied the pleading standards.

### 2.   Count 4: Breach of the Loan Modification Agreement

This claim depends on the analysis of evidence that is not before the court, and, as previously discussed, Defendants' arguments for dismissal on this claim relies on an exhibit which the court has declined to consider.   Once again, the court is simply charged with determining whether

Plaintiff's claim has satisfied the pleading standards, not what the evidence set forth thus far shows. The court concludes that Plaintiff's breach of the loan modification agreement survives Defendants' motion to dismiss because Plaintiff has clearly pled sufficient factual content for the court to infer that this agreement exists and Defendants breached it.[21]

### 3.   Count 6: Promissory Estoppel (in the Alternative)

Plaintiff has also asserted a claim based upon promissory estoppel.  Promissory estoppel is defined as a "promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *Mazer v. Jackson Ins. Agency*, 340 So. 2d 770, 772-773 (Ala. 1976) (citations omitted).  The Alabama Supreme Court has declined to permit "a plaintiff's reliance on nonfraudulent representations [under the doctrine of promissory estoppel] to abrogate the Statute of Frauds" *Durham v. Harbin*, 530 So. 2d 208, 213 (Ala. 1988).

Defendants rely on *Durham* for their argument that Plaintiff's promissory estoppel claim is due to be dismissed.  However, it is not clear whether Plaintiff is attempting to get around the Statute of Frauds issue, as Defendants argue, because Plaintiff also maintains that the loan modification agreement exists.  (Doc. # 27 ¶¶ 69-76).  Plaintiff further alleges that Defendants sent him the loan modification agreement to induce him to rely on that agreement and make modified payments accordingly.  Given the uncertainty surrounding the facts on which Plaintiff's claim rests, such as

---

[21] The court notes that come the time for ruling on any summary judgment motion, if Plaintiff cannot produce the alleged loan modification agreement, he will be forced to deal with the Alabama Statute of Frauds issue.  The court does not express an opinion on whether the alleged agreement described by Plaintiff will ultimately be found to satisfy the Statute of Frauds, but notes that if the agreement fails to materialize, Plaintiff, at a minimum, faces an uphill battle in asserting this claim.

whether the loan modification exists, the court concludes that Plaintiff's promissory estoppel claim has satisfied the lenient pleading standards.

### 4.      Count 8: Slander of Title

Plaintiff's allegations involving this claim include the following assertions: Plaintiff has never been provided with any evidence that the rights to his mortgage were validly transferred to Citi and Fannie Mae; Citi did not have the authority to foreclose on Plaintiff's property; the foreclosure sale was illegal; the foreclosure deed has placed a cloud on Plaintiff's title and/or right to his property; and Defendants acted maliciously and with reckless disregard of Plaintiff's property rights. (Doc. # 27 ¶¶ 87-89).

Claims for slander of title are brought under section 6-5-211 of the Alabama Code, providing that "[t]he owner of any estate in lands may commence an action for libelous or slanderous words falsely and maliciously impugning his title." Ala. Code § 6-5-211.  The elements of a slander of title action under Alabama law are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire and Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003) (citations omitted).

Although it is not entirely clear what Plaintiff alleges constituted the "publication" – *i.e.*, whether it was the foreclosure deed itself or the notice of the foreclosure sale – Plaintiff has set forth sufficient facts for the court to reasonably infer that the alleged conduct, and the elements of a slander of title claim, occurred.  *See Patterson v. United Cos. Lending Corp.*, 4. F. Supp. 2d 1349,

1355 (M.D. Ala. 1998) (discussing a slander of title claim under Alabama law and noting that the publishing of a foreclosure notice can give rise to a slander of title claim).  Defendants' argument for dismissal on this claim relies on a case from the Southern District of Alabama where the slander of title claim was dismissed on summary judgment because of the dearth of record evidence.  *See Mortensen v. MERS*, 2010 WL 5376332, at *10 (S.D. Ala. Dec. 23, 2010).  Consistent with the reasoning expounded upon by the Southern District of Alabama, the court finds that Plaintiff's claim for slander of title turns on the facts of this case, and any qualitative evaluation of the facts is simply not proper at this point.  Plaintiff has alleged a plausible slander of title claim.

### 5.    Count 10: Invasion of Privacy

Plaintiff also alleges he was placed in a false light because notice of the foreclosure sale of his property was published and because his property was foreclosed on by Defendants.  (Doc. # 27 ¶ 96).  He asserts that Defendants knew or should have known that they did not have the authority to publish notice of the foreclosure sale and that Defendants' conduct was willful and highly offensive.  (*Id*. ¶¶ 97-98).  Plaintiff argues that because he was not in default of his loan when his property was foreclosed on, the foreclosure sale was invalid and thus the publishing of the foreclosure sale was a publication of false information.

The tort of invasion of privacy consists of four limited and distinct wrongs, and the privacy interest that has allegedly been invaded here includes the act of "putting the plaintiff in a false, but not necessarily defamatory, position in the public eye." *S.B. v. Saint James School*, 959 So. 2d 72, 90 (Ala. 2006).  "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the

actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id*. at 93 (internal quotations and citations omitted). Plaintiff's claim, dubbed the "false-light claim," does not require that the information made public be private, but that the information made public be false. *Id*. The court is not aware of, nor have the parties presented the court with, any caselaw suggesting that a false light invasion of privacy claim may (or may not) be supported by the publication of notice of an alleged wrongful foreclosure. But for now, the court will assume without deciding that this claim hinges on whether the foreclosure sale was valid, and in turn, whether notice of the foreclosure sale was based on false information. On this basis, the court concludes that Plaintiff has alleged a plausible false light invasion of privacy claim and Defendants' Motion to Dismiss is due to be denied on this claim.

## IV.    Defendants' Motion to Compel

Defendants also filed a Motion to Compel Plaintiff to make payments for his ongoing possession and use of real property (Doc. # 36) on May 9, 2012, to which Plaintiff responded (Doc. # 37). Defendants assert that Plaintiff is a tenant at sufferance under Alabama law and should be required to make payments to the Clerk of Court to be held in escrow. Defendants' arguments are flawed in two respects. First, Defendants have not alleged any claims against Plaintiff, and the fact that there may be some legal basis for which Plaintiff owes Defendants money is irrelevant to the claims that are (or foreseeably will be) joined in this action. Second, assuming arguendo that Defendants have a valid damages claim, their Motion is premature considering the court has not yet resolved the disputed issues in this action and has not entered (and is not entering) final judgment

in this case at this time.[22]  If Defendants' argument rests on a belief that the resolution of this action in their favor warrants an award of damages for them, Defendants may assert a counterclaim and either move for summary judgment or seek relief at trial.  However, at this point, their Motion (Doc. # 36) is due to be denied.

## V.    CONCLUSION

For the reasons discussed throughout this opinion, Defendants' Motion to Dismiss (Doc. # 28) is due to be granted in part and denied in part, and Defendants' Motion to Compel (Doc. # 36) is due to be denied without prejudice.  Specifically, the following of Plaintiff's claims are due to be dismissed: Count 1 is due to be dismissed with prejudice; Count 5 is due to be dismissed with prejudice; Count 7 is due to be dismissed without prejudice; and Count 9 is due to be dismissed without prejudice.  The court will enter a separate order disposing of Defendants' Motions and dismissing Counts 1, 5, 7, and 9 of Plaintiff's claims.

DONE and ORDERED this _____2nd_____ day of July, 2012.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[22] To the extent Defendants argue that their damages request is ripe for determination, they have not presented any supporting caselaw.  The court declines to entertain any argument on monetary awards on a motion to compel.